AMY M. KARLIN (Bar No. 150016)
Interim Federal Public Defender
NADINE C. HETTLE (Bar No. 149842)
(E-Mail: Nadine_Hettle@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
KEVIN LAMAR JAMES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN LAMAR JAMES,<br><br>Defendant. | Case No. CR-05-00214-CJC<br><br>**DEFENDANT'S POSITION RE: MODIFICATION OF CONDITIONS OF SUPERVISED RELEASE** |

Kevin Lamar James, by and through his attorney of record Nadine C. Hettle, hereby submits Defendant's Position Re: Modification of Conditions of supervised release.

Respectfully submitted,

AMY M. KARLIN
Interim Federal Public Defender

DATED: October 1, 2019         By  */s/ Nadine C. Hettle*
                                  NADINE C. HETTLE
                                  Deputy Federal Public Defender
                                  Attorney for KEVIN LAMAR JAMES

# DEFENDANT'S POSITION

## I. INTRODUCTION

The probation officer proposes nine new conditions of supervised release. See Supervision Report dated August 19, 2019. The defense requests that this court not impose proposed conditions two through seven.

## II. ARGUMENT

### A. Supervised Release Conditions Must Be Reasonably Related To The Facts of the Case And the History and Characteristics of The Defendant

Although a sentencing judge is given wide discretion in imposing special conditions of supervised release, such discretion is not "boundless." *Weber*, 451 F.3d at 557. A condition may be ordered only to the extent it (1) is reasonably related to certain factors, including (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) deterring further criminal conduct by the defendant, or (c) protecting the public from further criminal conduct by the defendant; and (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes of deterrence, protection of the public, and rehabilitation. *See, e.g., id.* at 557-58; *United States v. Williams*, 356 F.3d 1045, 1052 (9th Cir. 2004); *United States v. Wise*, 391 F.3d 1027, 1031 (9th Cir. 2004); 18 U.S.C. §§ 3583(d), 3553(a); *see also* U.S.S.G. § 5D1.3(b). Thus, any condition must be narrowly-tailored based on the particular circumstances of the defendant in each individual case, and it must be the least restrictive condition necessary to achieve the goals of supervision.

Moreover, although a district court may restrict fundamental rights as a condition of supervised release, the district court's discretion is carefully reviewed where the condition restrict such rights. *See United States v. Terrigno*, 838 F.2d 371, 374 (9th Cir. 1988). And as this Court explained in *United States v. Wolf Child*, 699 F.3d 1082, 1090 (9th Cir. 2012), when a condition of supervised release implicates a particularly significant liberty interest, "the district court must support its decision to impose the condition on the record with record evidence that the condition of supervised release

sought to be imposed is *necessary* to accomplish one or more of the factors listed in [18 U.S.C.] § 3583(d)(1) and involves no greater deprivation of liberty than is reasonably necessary." *Id.* (emphasis in original) (internal quotation marks omitted).

Finally, the government has the burden of justifying the necessity of any supervised release condition and thus it first must establish that the condition is reasonably related to the specified statutory factors, and "it shoulders the burden of proving that a particular condition of supervised release involves no greater deprivation of liberty than is reasonably necessary to serve the goals of supervised release." *Weber*, 451 F.3d at 558-59.

**B.    The Third and Fifth Proposed Conditions Are Impermissibly Vague and All Computer Monitoring Conditions Expressed in Conditions Three through Six Are Not Reasonably Related to This Case and Mr. James' History and Characteristics**

The probation officer requests that this court impose new special conditions of supervised release which subjects Mr. James to installation of unspecified monitoring software or hardware on all his digital devices, and which precludes him from even updating any digital device without first receiving probation officer approval. See August 19, 2109 Supervision Report.  The severe restrictions that these condition would place upon Mr. James' life are both vague and involve a greater deprivation of liberty than is reasonably necessary to achieve the goals of sentencing in 18 U.S.C. § 3553; 18 U.S.C. § 3583(c).

First, these conditions are impermissibly vague.  The Ninth Circuit has explained that "[a] probationer . . . has a separate due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison." *United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) ("we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly"); *United States v. Schave*, 186 F.3d 839, 843

2

1  (7th Cir. 1999)). And courts have stated that a release condition "cannot be cured by
2  allowing the probation officer an unfettered power of interpretation, as this would
3  create one of the very problems against which the vagueness doctrine is meant to
4  protect, *i.e.*, the delegation of 'basic policy matters to policemen . . . for resolution on
5  an ad hoc and subjective basis.'" *United States v. Loy*, 237 F.3d 251, 266 (3d Cir.
6  2001) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972)) (additional
7  citations omitted); *see also Guagliardo*, 278 F.3d at 872. "[W]here a vague statute
8  abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the
9  exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far
10 wider of the unlawful zone . . . than if the boundaries of the forbidden areas were
11 clearly marked." *Grayned*, 408 U.S. at 109 (internal quotation marks, alterations, and
12 citations omitted).

13 When a statute "either forbids or requires the doing of an act in terms so vague
14 that men of common intelligence must necessarily guess at its meaning and differ as to
15 its application," it violates due process. *Connally v. General Constr. Co.*, 269 U.S.
16 385, 391 (1926). The same principles apply to a condition of supervised release. *See*
17 *United States v. Schave*, 186 F.3d 839 (7th Cir. 1999); *LoFranco v. United States*
18 *Parole Comm'n*, 986 F. Supp. 796, 808-811 (S.D.N.Y. 1997) (striking as
19 unconstitutionally vague a parole condition prohibiting association with "outlaw
20 motorcycle gangs" because unclear what groups might be included), *aff'd*, 175 F.3d
21 1008 (2d Cir. 1999), *cert. denied*, 526 U.S. 1160 (1999).

22 Proposed conditions 3 and 5 are unconstitutionally vague as they fail to specify,
23 or limit in any way, the nature of the computer monitoring software Mr. James must
24 accept on his digital devices and overbroad because they are not reasonably related to
25 any real threat. In *United States v. Sales,* 476 F.3d 732, 737 (9th Cir. 2007), this Court
26 acknowledged that "monitoring software and/or hardware takes many forms, with
27 greatly varying degrees of intrusiveness." *See also United States v. Lifshitz,* 369 F.3d
28 173, 191-92 (2d Cir. 2004) (surveying methods of monitoring and finding that

3

"products and techniques currently available diverge vastly in their breadth, and in their implications for computer users' privacy").[1] This Court was thus required in *Sales*—in which defendant was convicted of counterfeiting federal reserve notes—to address "whether a condition of supervised release employing the broad term 'monitoring,' without qualification, occasioned a greater deprivation of liberty than reasonably necessary." *United States v. Quinzon*, 643 F.3d 1266, 1271 (9th Cir. 2011) (citing *Sales*, *supra*). This Court recognized that "[a] computer monitoring condition in some form may be reasonable," *Sales*, 476 F.3d at 373, but because the condition at issue gave "no indication as to what kinds or degrees of monitoring [were] authorized," the Court vacated it and remanded for further clarification. *See id.* at 737-38. The same applies here.

In *Quinzon*, 643 F.3d at 1271, this Court thus recognized that "monitoring is broad, encompassing some methods that are quite intrusive and therefore, perhaps, problematic." (internal quotation marks and citation omitted). The Court nevertheless upheld a generic computer monitoring condition because the specific condition expressly applied only to devices "connected to the Internet," and therefore was "meant to target only his Internet-related computer conduct; computer activities not related to the Internet [we]re not to be monitored." *Id.* at 1272. The Court made this determination in light of the fact that defendant was convicted of a child pornography crime and the court was thus concerned with Quinzon continuing to access and share child pornography via the Internet. *Id.* at 1272-73.

---

[1] "Some monitoring software, for instance, records all computer-based activities, 'including those performed locally without connection to the Internet or any network—such as . . . word processing activities.'" *Quinzon*, 643 F.3d at 1271 (quoting *Lifshitz*, 369 F.3d at 191). "Other monitoring targets only Internet-related activity, by, for example, 'rel[ying] on records from the Internet Service Provider ("ISP"), through whom an account user's requests for information or e-mails are routed.'" *Id.* (quoting *Lifshitz*, 369 F.3d at 191). "Technologies, moreover, vary within these categories: '[S]ome software focuses attention upon specific types of unauthorized materials, whereas other kinds monitor all activities engaged in by the computer user.'" *Id.* (quoting *Lifshitz*, 369 F.3d at 191).

4

Unlike *Quinzon*, condition 3 here is *not* limited to computers that can access the Internet; the monitoring applies to all "digital devices." Condition 5, which requires compliance with the undefined "Computer Monitoring Program" appears not to be limited to computers that can access the Internet either. Thus, unlike *Quinzon,* "technology that records *all* computer activity, such as programs [that] take a snapshot of computer use as frequently as once per second, would [*not*] be inconsistent with the condition." *Id.* Accordingly, because the computer monitoring requirements imposed in conditions 3 and 5 must be vacated.

The probation officer and government fail to establish that digital device monitoring is necessary here. The probation officer provides little justification for these conditions. It cites prison violations that are several years old that involve Mr. James being insolent towards prison officials for cuffing the pant legs of his uniform, complaining about a nurse requiring another inmate in pain to walk downstairs to receive medication, or congregating in a cell for either classes or group prayer when there is no indication that Mr. James is involved in organizing any terrorist activity at that class or group prayer. Clearly, given the lack of evidence supporting the imposition of conditions 3 and 5, these conditions are overly broad because they involve a far greater deprivation of liberty than is reasonably necessary in light of the need to protect the public and prevent recidivism. The government had the burden of establishing why the conditions were necessary. *See Weber*, 451 F.3d at 558-59. It failed to meet its burden.

Mr. James' rehabilitation is not furthered and the public is not protected by subjecting him to 24-hour surveillance of his computer. It may be convenient for the probation officer to spy on Mr. James for the next two three years—as it no doubt would be to spy on anyone with a criminal background—but just because it's something law enforcement may like does not mean it satisfies the strictures for special conditions of supervised release. Accordingly, proposed conditions 3 and 5 must not be imposed.

1    In addition, Condition 3 is also overly broad in its requirement that Mr. James to seek prior approval by the Probation Office to make "[a]ny changes or additions to digital devices or internet accounts" prior to "first use of the same." As this Court held more than a decade ago in *Goddard*, requiring "prior approval before making any software modifications is both unworkable and overbroad." *Goddard*, 537 F.3d at 1090. This Court explained that "[s]oftware on any computer connected to the Internet changes constantly. Broadly applied, the software modification portion of Condition 3 would prevent [defendant] from using any computer . . . without continually contacting his probation officer. This is more restrictive than necessary." *Id.* The same applies here, and it's unclear why the Probation Office would still be including such language this Court disapproved of so long ago in a condition today. The condition should not be imposed.

### C.   The Second Proposed Condition of GPS Monitoring Is Not Reasonably Related to This Case and Mr. James' Background

The 24-hour-a-day GPS monitoring of Mr. James' whereabouts that probation proposes is a substantial, overwhelming intrusion into his rights both to privacy and freedom of movement. With respect to privacy, the Fourth Amendment firmly protects the type of information revealed by GPS monitoring. *United States v. Jones*, 565 U.S. 400, 411-13 (2012); *see also Kyllo v. United States*, 533 U.S. 27, 33 (2001) ("[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable."). Indeed, in holding that warrantless searches of cell phone data violate the Fourth Amendment, the Supreme Court relied in part upon the GPS function of cell phones. *Riley v. California*, 573 U.S. 373, 396 (2014) ("Data on a cell phone can . . . reveal where a person has been. Historic location information is a standard feature on many smart phones and can reconstruct someone's specific movements down to the minute, not only around town but also within a particular building."). And in her concurrence in *Jones*, Justice Sotomayor explained:

6

> GPS monitoring generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations. [Citation.] The Government can store such records and efficiently mine them for information years into the future. . . . [¶] Awareness that the Government may be watching chills associational and expressive freedoms. And the Government's unrestrained power to assemble data that reveal private aspects of identity is susceptible to abuse.
>
> 565 U.S. at 415-16 (Sotomayor, J., concurring).

The probation officer and the government do not articulate any specific basis for asking for this additional condition. They seem to defend this condition with allegations that Mr. James has left the halfway house to go to specified locations and then gone elsewhere as justification why his every move should be monitored for the next three years. Mr. James' violations at the halfway house have occurred while he is still under a prison sentence where it is logical that his movements should be curtailed. Once out of the halfway house, his movements will not be similarly restricted while on supervision and therefore his deviation for a path of travel does not need to be monitored similarly.

The suggested rationale for imposing this condition by the probation and the government is that Mr. James doesn't follow rules and therefore GPS monitoring can deter him in the future from not following rules. This "better safe than sorry" justification applies to every single defendant on supervised release and cannot be a basis for imposing the condition here, without more. Imposing a condition of GPS monitoring would only be permissible to the extent it is reasonably related to the conditions of supervised release and involves no greater deprivation of liberty than necessary. Here, neither of those conditions is met. The GPS monitoring condition is not reasonably related to the relevant § 3553 factors in this case. It was not likely to deter future crime by Mr. James, and it is incapable of measuring compliance with the specific conditions of supervised release that had already been imposed. Furthermore, it is likely to have a detrimental effect on Mr. James' rehabilitation, which is one of the most important goals of supervised release.

The probation officer and government cite no statistics that GPS monitoring is unlikely to deter future crime or prevent recidivism. The U.S. Probation Office itself has emphasized that "location monitoring is nothing other than technology used to verify and enforce a condition of supervision." Trent Cornish, *The Many Purposes of Location Monitoring*, 74 Fed. Probation 2 (Sept. 2010).[2] In other words, "GPS technology *does not prevent sex offenders from committing crimes*, but it . . . may alert officers to potential *supervision violations*, and may allow the officer an opportunity to intervene in certain situations." Lisa Bishop, *The Challenges of GPS and Sex Offender Management*, 74 Fed. Probation 2 (Sept. 2010) (emphasis added).[3] General deterrence of crime, therefore, does not support the GPS monitoring condition in this case.

Nor do the specific conditions of supervised release in Mr. James' case justify the monitoring. In fact, the only conditions to which the monitoring could arguably be said to relate are the association conditions, such as original Conditions 5-7, which prevent him from associating with co-defendants or members of the Hoover Street Crips, and the proposed condition that he not associate with members of JIS. See J & C and Supervision Report dated August 19, 2019. At best, it is unclear how GPS monitoring could measure or help enforce these conditions. GPS would tell probation where Mr. James travels but it can't tell probation who he is associating with. Mr. James could associate with prohibited people in his very home. Thus, association conduct that violates his conditions of supervision cannot be measured or enforced by mere location monitoring. Rather, to the extent it would have any effect at all, the GPS monitoring would simply scare Mr. James into house-bound isolation for fear of traveling to a place that his probation officer disapproves of. The monitoring sweeps much more broadly than it should, and it is substantively unreasonable as a result.

---

[2] Download available at, https://www.uscourts.gov/federal-probation-journal/2010/09/many-purposes-location-monitoring.

[3] Download available at, https://www.uscourts.gov/federal-probation-journal/2010/09/challenges-gps-and-sex-offender-management.

Certain curtailments of some liberty interests, of course, may be appropriate on supervised release. And in some cases, for example, GPS monitoring is appropriately used to enforce specific, easily measurable conditions of supervised release, such as home detention or curfew. *See* 18 U.S.C. § 3583(e)(4) (district court may "order the defendant to remain at his place of residence during nonworking hours and . . . have compliance monitored by . . . electronic signaling devices"). This makes sense; it is relatively simple to determine whether someone has left his home or remained out past curfew. Here, however, the district court imposed 24-hour-a-day GPS monitoring without tethering it to a condition or rule it was capable of measuring.

Finally, the GPS monitoring has an unquestionably *negative* effect on one of the foremost goals of supervised release: Mr. James' s rehabilitation. *See United States v. Goddard*, 537 F.3d 1087, 1089 (9th Cir. 2008) (listing rehabilitation as one of three primary factors). Social isolation or avoiding integrating back into the community is detrimental to rehabilitation. By scaring Mr. James into avoiding travel and participation in public life, and by placing a visible device upon him, the GPS monitoring condition interferes with Mr. James' reintegration into society and increases his social isolation. *See Doe v. Bredesen*, 507 F.3d 998, 1012 (6th Cir. 2007) (Keith, J., concurring in part and dissenting in part) ("It is puzzling how the regularly means of requiring the wearing of [a] plainly visible device fosters rehabilitation."). The condition has an additional counterproductive effect by potentially dissuading Mr. James from traveling to work, or other activities conducive to his long-term rehabilitation.

**D.    The Fourth Proposed Search Condition Should Not Be Eliminated and The Seventh Proposed Condition Should Be Modified.**

The fourth proposed condition subjects all of Mr. James' devices to search and seizure without any cause. In *Riley v. California*, 573 U.S. 373, 396 (2014) the Supreme Court held that warrantless searches of cell phone data violation the Fourth Amendment. See *see also Kyllo v. United States*, 533 U.S. 27, 33 (2001) ("[A] Fourth

9

Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable."). As already stated, these devices included GPS data of where an individual has been and all communications. Thus, for the reasons already stated above the defense objects to unwarranted searches of cell phone data because it intrudes upon Mr. James' rights without sufficient justification.

The defense requests that the court not impose the seventh condition of warrantless searches without probable cause or reasonable suspicion. The court should require some level of cause be shown before a search is permitted.

### III.  CONCLUSION

For the reasons set forth above, the defense requests this court not impose proposed conditions two through seven.

Respectfully submitted,

AMY M. KARLIN
Interim Federal Public Defender

DATED: October 1, 2019          By  */s/ Nadine C. Hettle*
                                NADINE C. HETTLE
                                Deputy Federal Public Defender
                                Attorney for KEVIN LAMAR JAMES